UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMY HOPKINS, CHERYL LANE,
ADRIENNE HAUSE, and TONI STONE,

          Plaintiffs,

          v.

STERICYLE INC.,

          Defendant.

No. 22 CV 1349

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiffs Amy Hopkins, Cheryl Lane, Adrienne Hause, and Toni Stone are female employees of defendant Stericycle Inc. They allege that they perform the same work as other male employees, but defendant pays them less. Plaintiffs bring this suit for pay discrimination on the basis of sex under the Equal Pay Act and Title VII of the Civil Rights Act of 1964. Stericycle now moves for summary judgment. For the reasons discussed below, the motion is granted.

## I.    Legal Standards

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party … [and] [t]he substantive law of the dispute determines which facts are material." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (internal citations omitted). I view all the facts and draw reasonable inferences in favor of the non-

moving party to determine whether summary judgment is appropriate. *See Uebelacker v. Rock Energy Coop.*, 54 F.4th 1008, 1010 (7th Cir. 2022).

## II. Facts

### A. The Parties

Stericycle provides services to healthcare organizations, patients, and commercial businesses to dispose of medical waste, shred confidential information, and protect patient-customer relationships. [42] ¶ 3.[1] Stericycle's sales team is responsible for selling, among other things, various regulated waste-disposal services to clients. [49] ¶¶ 49, 52; [56] ¶ 2. The sales umbrella consists of a national accounts division and hospital division. [42] ¶ 15; [56] ¶ 4. The national accounts division sells services to corporate entities like Walgreens or labs. [42] ¶ 49. These services include hazardous drug disposal, confidential information destruction, and "seal & send" mail-back containers. [42] ¶ 49. The hospital side sells services to hospitals and integrated delivery networks. [42] ¶ 50. These services include, for example, changing medical waste containers in hospitals and arranging transportation for pick-up.[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from plaintiffs' response to defendant's Local Rule 56.1 statement, [42], and defendant's response to plaintiffs' statement of additional material facts, [56], where both the asserted fact and the opposing party's response are set forth in one document. Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Where the parties dispute facts and both rely on admissible evidence, I include both sides' versions, understanding that the nonmovant is entitled to favorable inferences.

[2] Plaintiffs and defendant both make several objections to the opposing party's facts regarding the differences between the national accounts and hospital divisions. [42] ¶¶ 47–55; [56] ¶¶ 6, 35. For example, defendant asserts that the hospital side requires "significantly

A salesperson's total compensation is made up of two components: a base salary and commissions. [42] ¶ 13; [56] ¶ 1. Base salaries compensate employees for non-sales related responsibilities. [56] ¶ 1. Stericycle reviews an employee's performance each year and awards a merit increase to their base salary that correlates to their performance reviews. [42] ¶ 11. Commissions are earned from: (1) the book of business assigned to employees by Stericycle, (2) additional revenue secured from a renewed contract on an existing customer, and (3) new business secured from a contract on a new customer service. [42] ¶ 13.

Plaintiffs are Key Account Directors. [42] ¶¶ 4–10. Amy Hopkins began working for Stericycle in 2009 when Stericycle acquired Medserve, Inc. [42] ¶ 4. She began as an Account Executive earning a base salary of $49,500 plus commissions. [42] ¶ 4. She held the position of National Account Manager for five years before her assignment to the current role. [42] ¶ 5. In 2022, she earned a base salary of $100,940 and commissions of $179,088 for a total compensation of $280,028. [38-2] at 2; [42] ¶ 14.

Cheryl Lane began working for Stericycle in 2013 as a Regional Account Executive earning a base salary of $60,000 plus commissions. [42] ¶ 6. She held the position of National Account Manager for five years before becoming a National KAD.

more complex services" or that "National KADs are not required to undertake nearly as much coordination as Hospital KADs." [42] ¶¶ 50, 55. To the extent that the parties rely on characterizations of testimony, I omit the characterizations and cite to the underlying evidence when possible.

[42] ¶ 6. In 2022, she earned a base salary of $100,940 and commissions of $45,819 for a total compensation $146,759. [38-2] at 2; [42] ¶ 14.

Adrienne Hause began working for Stericycle in 2001, left to work for EnServ in 2007, and returned Stericycle in 2009 when the company acquired EnServ. [42] ¶ 7. She held the position of National Account Manager for two years before becoming a National KAD. [42] ¶ 8. In 2022, she earned a base salary of $100,940 and commissions of $40,935 for a total compensation of $141,875. [38-2] at 2; [42] ¶ 14.

Toni Stone joined Stericycle in 2016 when the company acquired Shred-It and started as a Regional Account Manager earning a base salary of $57,000 plus commissions. [42] ¶ 9. Stone's highest degree is a high school diploma. [42] ¶ 9. She held the position of National Account Manager for two years before becoming a National KAD. [42] ¶ 10; [42] ¶ 14. In 2022, she earned a base salary of $100,940 and commissions of $125,006 for a total compensation of $225,946. [38-2] at 2; [42] ¶ 14.

### B. Project Supernova Reorganization

Stericycle implemented Project Supernova in 2021 to restructure its sales operations. [42] ¶ 15. The reorganization created a new role on both the hospital and national accounts side—Key Account Director. [42] ¶ 18; [38-4] at 3. On the hospital side, the reorganization eliminated the Senior National Account Executive (paygrade 8), Regional Integrated Account Executive (paygrade 7), and Strategic Account Executive (paygrade 7) positions. [38-4] at 3–4. These positions did the same work as the newly created Hospital KAD position. [38-4] at 3–4. On the national accounts side, the reorganization eliminated the Senior National Account Manager and

National Account Manager positions and created the Key Account Director (paygrade 8), Enterprise Account Executive (paygrade 7), and Account Executive (paygrade 5) positions. [42] ¶ 16. The National KAD role was responsible for managing accounts valued at $1 million or more and was the most sought-after position. [42] ¶ 16.

Before Supernova, plaintiffs all held positions as National Account Managers (paygrade 7). [42] ¶ 16. After the reorganization, plaintiffs were promoted to the National KAD role (paygrade 8) and received an increase to their base salaries: Hopkins earned $93,271, Hause earned $95,026, Lane earned $92,784, and Stone earned $89,000.[3] [42] ¶ 17; [56] ¶ 7. Plaintiffs filled four of the six newly created National KAD positions. [42] ¶ 18. The other two positions were filled by another female employee (previously a Senior NAM at paygrade 8) and Employee 1 (previously a Regional Sales Director at paygrade 9). [38-4] at 8; [42] ¶ 18.

Employee 1[4] began working at Stericycle in 2010 as a senior account manager. [42] ¶ 26. He was hired with a bachelor's degree and over 20 years of sales experience. [42] ¶ 26. At the time of his hiring, his desired compensation was $150,000. [42] ¶ 26. Stericycle negotiated with him to arrive at a base salary of $120,000 plus commissions

---

[3] Plaintiffs dispute whether moving from the NAM to National KAD role was a lateral move or a promotion. [42] ¶ 17; [56] ¶ 9. Plaintiffs assert that Vice President of National Accounts, Christopher Frey, told Hopkins that the move was not a promotion, but Hopkins's testimony shows that Frey expressed uncertainty and told her he would follow up with her. [49-2] at 214:1–20 ("A: I asked about the salary, and [Frey] said You're -- you're already doing the job, there's no salary. And I said, That's not the understanding. And he also said he didn't know, but he didn't think that there was a salary. He was going to find out."). Frey's uncertainty does not controvert Senior Director of Human Resources Erin Galloway's testimony that a move from NAM to National KAD was considered a promotion from paygrade 7 to paygrade 8. [38-4] at 3. Internal HR documents also support this fact. *See, e.g.*, [49-7] at 2.

[4] The parties refer to a male comparator as Employee 1 due to discussion of his medical history. All other male comparators are identified by name.

and stock options. [42] ¶ 26. He worked in the senior NAM position for 10 years before his promotion to a Regional Sales Director position in 2019. [42] ¶¶ 27–29. Regional Sales Director is a paygrade 9 position that includes sales responsibilities as well as supervision of six subordinate employees. [42] ¶ 29. After returning from medical leave and amidst the ongoing reorganization, Employee 1 asked to step down from Regional Sales Director to a less demanding role due to ongoing health concerns.[5] [42] ¶ 32; [56] ¶ 12. Employee 1 spoke with Vice President of National Accounts, Christopher Frey, to seek a demotion. [42] ¶¶ 32–33; [56] ¶ 14. Frey was newly promoted to the position and oversaw the national accounts division; KADs directly reported to Regional Sales Directors and the Regional Sales Directors reported to Frey. [42] ¶ 19. Frey was receptive to Employee 1's request. [42] ¶ 33. Employee 1 suggested a demotion to his prior salary as a Senior National Account Manager—a base salary of $151,998 plus commissions in 2019. [42] ¶¶ 33–34; [56] ¶ 14. As a

---

[5] Plaintiffs assert that Employee 1 told Hopkins the reason he asked to move down was because he "hates" Frey and did not want to report directly to him after the reorganization. [56] ¶ 12. Lane also testified that Employee 1 shared his concerns about Frey with Senior Vice President Kelly Caruso and was told that she would "take care of him." [56] ¶ 12. Defendant objects to Hopkins's and Lane's testimony as inadmissible hearsay. Hopkins's and Lane's testimony about what Employee 1 told them are out-of-court statements being offered to prove the truth of the matter asserted—that Employee 1's real reason for stepping down was because he disliked Frey rather than for medical reasons—and is inadmissible hearsay. *See* Fed. R. Evid. 801(c). The admissible evidence directly from Employee 1 is that he had some prior frustrations with Frey, which he expressed to a previous supervisor, but he never said that he didn't want to work with Frey. [49-13] at 33:13–22 ("I talked to Kathryn Evans about my frustrations. You know, when she was both our managers previously to that, she knew I was frustrated at the time. I didn't say to her – I really don't believe that I ever said to her that I didn't want to work for him, but she knew that I was frustrated at some things that had occurred in the past, you know. But I don't recall saying to Kathryn, I don't want to work for him."). After having a conversation with Frey, Employee 1 worked on Frey's team without further problems. [49-13] at 32:9–33:1.

Regional Sales Director, Employee 1 had previously earned a salary of $172,213 plus stock options. [42] ¶ 34. After his demotion to the National KAD position in 2022, Employee 1 earned a base salary of $155,000 and commissions of $92,359 for a total compensation of $251,621. [38-2] at 2; [42] ¶ 36. Employee 1's 2022 base salary reflected a 2% increase from his 2019 base salary and eliminated the equity portion of the compensation that he had received as a Regional Sales Director. [42] ¶ 36.

On the hospital side, nine male employees moved to the KAD position—Roni Patel, Robert Austin, Sean Coyne, Craig Ott, Joseph Roberts, William Brown, Kerry Ritchie, Lawrence Sheldon, and Joey Malone. [38-2] at 2; [42] ¶ 65.[6] Only Roni Patel and Robert Austin were promoted to the position of KAD (paygrade 8) from their former positions of Major Account Manager (paygrade 5). [38-4] at 4. Stericycle did not treat any moves from the Regional Integrated Accounts Executive, Senior National Account Executive, and Strategic Account Executive positions as

---

[6] Defendant asserts that plaintiffs "disavowed" alleging the Hospital KADs as their male comparators because they made no attempt to raise them as comparators until their depositions. [39] at 19–20. Plaintiffs do not need to allege male comparators in their complaint. *See Kellogg v. Ball State Univ.*, 984 F.3d 525, 531 (7th Cir. 2021) (noting that the notice pleading standard under Fed. R. Civ. P. 8 does not require plaintiffs to identify all possible comparators); *see also* [33]. Nor do plaintiffs expressly disavow other male comparators by failing to mention them in a deposition. *See id.* at 531–32 (finding that plaintiff's reliance on other comparators than those mentioned at her deposition did not constitute relinquishment). I deny plaintiffs' request to strike portions of Galloway's declaration from the record. [46] at 13–14. Plaintiffs argue that Galloway's declaration is inconsistent with her deposition because Galloway initially testified that she did not know why Hospital KADs were paid more. [46] at 14. Defendant submitted the Galloway declaration after learning of plaintiffs' intention to name the Hospital KADs as comparators. [57] at 3–4. Nothing in the declaration is contradictory—it offers further information about how Hospital KADs were compensated after the Supernova reorganization. I decline to strike portions of Galloway's declaration from the record, and I allow plaintiffs to include the Hospital KADs in the analysis of their claims.

promotions. [38-4] at 3. All of the other male employees who moved into the Hospital KAD position retained their prior salaries. [38-3] at 2–3. In 2022, Roni Patel earned a base salary of $100,940 with commissions of $52,720 for total compensation of $153,660. [38-2] at 2. Robert Austin earned a base salary of $114,320 with commissions of $80,261 for a total of $194,581. *Id.* Sean Coyne earned a base salary of $146,260 and commissions of $82,680 for a total of $228,940. *Id.* Craig Ott earned a base salary of $115,984 with commissions of $56,827 for a total of $172,811. *Id.* Joseph Roberts earned a base salary of $110,339 with commissions of $74,310 for a total of $184,649. *Id.* William Brown earned a base salary of $137,702 and commissions of $67,099 for a total of $204,801. *Id.* Kerry Ritchie earned a base salary of $122,066 and commissions of $119,594 for a total of $241,660. *Id.* Joey Malone earned a base salary of $123,579 and commissions of $272,573 for a total of $396,152. *Id.*

## C.    Internal Complaint About Plaintiffs' Compensation

In November 2021, Stericycle hosted a multi-day sales meeting where Hopkins discussed the issue of base salaries with Employee 1.[7] [56] ¶ 22. Employee 1

---

[7] Plaintiffs assert that there were three meetings between Hopkins and Vice President Frey where Frey denied that Employee 1 was earning more than Hopkins. [56] ¶¶ 19–21. Hopkins testified that she met with Frey in September 2021 when she expressed concern that Employee 1 was earning a higher base salary than her. [56] ¶ 19. Hopkins testified that Frey denied that this was true. [56] ¶ 19. Defendant objects to plaintiffs' fact as unsupported and disputes that this conversation could have occurred in September 2021 because Employee 1 did not receive an offer letter with a base salary until October 2021. Stericycle's records date the offer letter with salary information for Employee 1 in October 2021, so it does appear that Employee 1 could not have been earning more than Frey before he started working in the position. *See* [38-6] at 40. Plaintiffs also assert a second meeting in October 2021 where Frey denied the allegation again. [56] ¶ 20. Defendant objects to this fact as unsupported because

8

expressed surprise and "gasped" when he learned about Hopkins's lower base salary. [56] ¶ 22. Hopkins discovered that Employee 1 was making only $17,000 less than when he was in the Regional Sales Director position and $4,000 more than when he was previously a National Account Manager. [56] ¶ 13. After learning of Employee 1's higher base salary, plaintiffs sent a letter to Senior Director of Human Resources, Erin Galloway, expressing their concerns about inequitable compensation. [42] ¶ 39; [56] ¶ 24. Galloway responded that she would investigate their concerns and Stericycle would review their salaries in the new KAD role. [42] ¶ 40. A week later, Stericycle advised plaintiffs that their base salaries would be increased to $98,000. [42] ¶ 40. In reaching this decision, the compensation team considered plaintiffs' years of experience, skill, and performance as well as the salary range for the KAD position and salaries of other KAD employees. [56] ¶ 26.

Plaintiffs then filed a charge for sex discrimination with the EEOC and timely filed this suit. [42] ¶¶ 1, 43.

---

Hopkins's testimony does not mention speaking to Frey on this date. [56] ¶ 20. I sustain defendant's objection. The meeting that plaintiffs allege occurred in November 2021 was between Hopkins and Employee 1—not Frey. *See* [49-2] at 239:19–240:16. Plaintiffs assert that there was a third meeting in November 2021 where Frey told Hopkins to "let it go" after she asked him about the salary disparity. [56] ¶ 21. Defendant objects because the fact misrepresents Hopkins's testimony. I sustain defendant's objection. Hopkins testified to the conversation being about updates on whether National KADs would be receiving a letter announcing their new role and salary like Employee 1 had received. The full context shows that Frey's comment to "let it go" was about plaintiffs receiving formal letters. *See* [49-2] at 243:18–24 ("Q: And so based on this, you had a third conversation with Chris Frey, and you asked him for updates as to whether or not the KADs were getting a letter. What did you mean by that? A: A letter of our new salary, and the announcement of the official role, like [Employee 1] received."). In any event, these alleged meetings are not material to plaintiffs' claims. That Employee 1 earned more than plaintiffs as a KAD after the reorganization is not in dispute.

III.     Analysis

A.     Equal Pay Act

The Equal Pay Act prohibits pay discrimination on the basis of sex.  29 U.S.C. § 206(d)(1). To establish a prima facie case under the Act, plaintiffs must prove: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003). "Equal work" means that the jobs share "a common core of tasks" and that there are no additional tasks that make the jobs "substantially different." *Id.* Plaintiffs do not need to prove discriminatory intent. *Id.*

If plaintiffs establish a prima facie case, the burden shifts to the employer to prove a sex-neutral factor that explains the pay discrepancy. *Lauderdale v. Illinois Dep't of Hum. Servs.*, 876 F.3d 904, 907 (7th Cir. 2017). These affirmative defenses include: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Defendant only raises the fourth affirmative defense. *See* [39] at 15–18, 25–26. This fourth defense is a broad, catch-all exception. *Fallon v. State of Ill.*, 882 F.2d 1206, 1211 (7th Cir. 1989). The factor other than sex cannot be discriminatorily applied or cause a discriminatory effect. *Id.* An employer's justification need not be a "good reason" so long as it is sex-neutral, but the justification must be bona fide. *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008). It is not enough for an employer to assert that the difference in pay

10

between employees is the result of a factor other than sex. *See King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012). They must prove that the neutral factor actually explains the difference. *Id.*

### 1. Plaintiffs' Prima Facie Case

#### a. Wage Disparity

Defendant argues that plaintiffs fail to establish the wage disparity element of their prima facie case when measuring wages by the total compensation figure (base salary plus commissions) rather than the base salary alone. [39] at 14–15; [57] at 4. Defendant points out that Hopkins has the second-highest total compensation of the National and Hospital KADs, which makes her pay higher than Employee 1's and higher than all but one male Hospital KAD's pay. [38-2] at 2; [57] at 4. Stone's total compensation is lower than Employee 1, Joey Malone, Lawrence Sheldon, Kerry Ritchie, and Sean Coyne, but higher than all other male Hospital KADs. [57] at 4; [38-2] at 2. Even under defendant's view, however, Lane and Hause have the two lowest total compensation figures among the KADs, so both have established a wage disparity. [38-2] at 2. Under plaintiffs' view, all four of them earn a base salary of $100,940—lower than all but one male Hospital KAD's base salary (who is not named as a male comparator). *Id.*

The Equal Pay Act prohibits an employer from discriminating on the basis of sex by paying wages to employees "at a rate less than the rate at which he pays wages to employees of the opposite sex… for equal work." 26 U.S.C. § 206(d)(1). The EEOC defines the term "wages" to include "all forms of compensation… whether called

wages, salary, profit sharing, expense account, monthly minimum, bonus… or some other name." 29 C.F.R § 1620.10. The regulations define wage "rate" in the Act to refer to:

> [T]he standard or measure by which an employee's wage is determined and is considered to encompass all rates of wages whether calculated on a time, commission, piece, job incentive, profit sharing, bonus, or other basis. The term includes the rate at which overtime compensation or other special remuneration is paid as well as the rate at which straight time compensation for ordinary work is paid.

29 C.F.R § 1620.12(a). A violation of the Act is established if a higher wage rate is paid to an employee of the opposite sex for performance of equal work. 29 C.F.R § 1620.12(b).

Defendant cites to two district court cases to support its total-compensation argument. [57] at 4. The courts in *Gallagher v. Kleinwort Benson Gov't Sec., Inc.*, 698 F.Supp. 1401, 1404–05 (N.D. Ill. 1988) and *Marting v. Crawford & Co.*, 203 F.Supp.2d 958, 966 (N.D. Ill. 2002) found that female plaintiffs did not establish a prima facie case because their total salaries—when bonuses were included in the calculation—were higher than that of male employees. Defendant points to the courts' application of the EEOC's definition of "wages" as including all forms of compensation including commissions. [57] at 4. Plaintiffs cite to *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 655 (4th Cir. 2021), which held that the proper metric for comparison is wage rate rather than an employee's total wages. Without reaching the issue of deferring to the EEOC's interpretation of the statute, the Fourth Circuit found that the statute's plain text refers to wage rate rather than total wages. *Id.* The regulations define wages to encompass "all forms of compensation," but this merely clarifies that

differential pay of commissions would fall under the Act just as any other form of unequal compensation would. *Id.* The court noted that using total compensation would mean an employer could pay a man double the hourly rate as a woman and avoid liability so long as the female employee worked twice as many hours to make up the deficit. *See id.* at 655–56 (citation omitted).

The proper point of comparison is wage rate rather than total wages, and a comparison of wage rate considers the inputs for the total compensation. The courts in *Gallagher* and *Marting* only considered the EEOC's definition of "wages," but they did not consider the definition of wage "rate." *See Gallagher*, 698 F.Supp. at 1404 *and Martin*, 203 F.Supp.2d at 966. The text of the Equal Pay Act refers to the rate of pay, and the inquiry at the core of the Equal Pay Act is whether there was unequal pay for equal work. 26 U.S.C. § 206(d)(1). Looking at an employee's total compensation and overlooking disparities between the separate components that constitute total wages glosses over potential inequality. For example, Hopkins had a base salary of $100,940 compared to Employee 1's base salary of $155,000. [38-2] at 2. But Hopkins earned $179,088 in commissions—the second highest amount among all KADs—and nearly double the amount that Employee 1 earned in commissions. [38-2] at 2. As a result, her total compensation was $28,407 higher than Employee 1's total compensation. The difference in commissions earned by Hopkins and Employee 1 is much greater than the difference in their base salaries. But Hopkins's ability to make up the gap (and then some) is not evidence that Stericycle compensates work

equally—Hopkins's labor leveled the playing field, but the Act puts the onus on the employer.

Defendant argues that plaintiffs were assigned the most lucrative accounts and did not have to work harder than male employees to earn their substantial commissions. [57] at 4. This argument is undercut by Stericycle's commission structure where the "existing book of business" assigned to sales employees is just one component of total commissions that can be earned. [42] ¶ 13. An employee can also earn commissions from additional revenue secured from a renewed contract or new business secured from a contract on a new service. [43] ¶ 13. These two streams of potential commission reward employees who are more successful in selling services to clients. The prima facie case for wage disparity does not depend on plaintiffs' success in earning commissions compared to other employees.

Using base salaries as the point of comparison, plaintiffs establish a wage disparity as to Employee 1, Sean Coyne, Craig Ott, Joseph Roberts, Robert Austin, William Brown, Kerry Ritchie, Lawrence Sheldon, and Joey Malone. All four plaintiffs earn a lower base salary than those nine male employees [38-2] at 2. Plaintiffs do not argue that Hospital KAD Roni Patel, who earns the same base salary of $100,940, is being paid more than them, so I do not consider him to be a male comparator. [38-6] at 21.

> b.   Equal Work

To establish a prima facie case, plaintiffs must also show that they performed substantially equal work as their male comparators. *Fallon*, 882 F.2d at 1208.

14

Defendant does not dispute that plaintiffs perform equal work as Employee 1 in the National KAD position. [39] at 15–16. The parties disagree whether plaintiffs perform equal work as the eight male Hospital KADs.

To show that they perform substantially equal work, plaintiffs must establish that the same level of skill, effort, and responsibility is required by the Hospital and National KAD positions. *See Cullen*, 338 F.3d at 698 (citing 29 U.S.C. § 206(d)(1)). This inquiry focuses on positions rather than individuals. *Id.* at 699. Skill refers to "experience, training, education, and ability." 29 C.F.R § 1620.15. Effort relates to the "measurement of the physical or mental exertion needed for the performance of a job." 29 C.F.R § 1620.16. Responsibility looks at "the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R § 1620.17.

Plaintiffs point to the job description for the KAD role, which is identical for the national and hospital sides, as demonstrating substantially equal work. [46] at 16. Defendant admits that after the reorganization, the job requirements and responsibilities listed for the National and Hospital KAD positions were identical. [56] ¶ 10. The job description lists several responsibilities including: managing national accounts with multiple service lines, developing strategies to increase profitable growth, and growing accounts to identify and develop relationships with key stakeholders. [43-10] at 1. As for education and experience, the posting requires a bachelor's degree and ten or more years of sales experience. [43-10] at 2. As is typical of job postings, the descriptions are broad. Job descriptions may be probative even if

15

they are not dispositive of whether positions require equal work. *See Epstein v. Sec'y, U.S. Dep't of Treasury*, 739 F.2d 274, 277 n.6 (7th Cir. 1984). Still, job descriptions do not "trump actual tasks" required by the positions. *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

According to plaintiffs, the common core of tasks between the Hospital and National KADs are the same: servicing, maintaining, and growing their books of business; selling to the company's largest customers of $1 million or more; and selling the same services to their clients. [46] at 14; [56] ¶ 6. At the broadest level, defendant does not dispute that these are duties required of all KADs. But defendant contends the Hospital KAD position requires specialized knowledge about the hospital setting, demands more effort in coordinating complex services, and has additional responsibilities like selling services that National KADs do not sell. [39] at 21–23; [57] at 10. Defendant points to the fact that the national accounts and hospital divisions each have different chains of command with no overlap in direct supervisors. [42] ¶ 48. Additionally, National KADs service corporate clients like Walgreens whereas Hospital KADs service hospitals and integrated delivery networks. [42] ¶¶ 49–50. Much like job descriptions, these structural and organizational differences may be probative, but they do not prove that National and Hospital KADs perform different tasks.

Defendant identifies additional responsibilities performed by Hospital KADs. Defendant asserts that the Hospital KAD role requires a higher degree of specialized knowledge about medical waste regulations, but what this additional expertise

16

entails is unclear. *See* [42] ¶ 55; [49-3] at 86:18–87:22 ('[T]here is a vernacular, there is a skill set, there's an experience level of working within a hospital and understanding hospitals."). Vice President Frey acknowledged that employees on the national side are required to have knowledge of medical waste regulations too. [49-1] at 10:10–13. The job description mentions no additional licenses or certifications for these specialized skills. [43-10] at 2. Viewing these facts in a light favorable to plaintiffs, there is a dispute over the skills involved in the positions.

Defendant points to additional services sold by Hospital KADs and the higher degree of complexity that requires more coordination. According to Senior Vice President Caruso, hospitals produce significantly higher volumes of waste and require additional coordination and services. [49-3] at 80:6–80:12. Defendant offers one example of a service sold by Hospital KADs that National KADs do not sell. The "in-service" group at Stericycle provides services within hospitals like a technician to change medical waste containers and transport them to controlled substance rooms for pick-up. [49-3] at 81:2–81:15. In contrast, the national side involves a lot of "self-service" solutions where Stericycle employees do not physically service the sites. [49-3] at 84:16–84:20. Servicing hospital clients requires more coordination because the buying cycle of hospitals is "lengthy," meaning various constituents within a large hospital network generally need to weigh in before purchasing a service from Stericycle. [42] ¶ 53. Plaintiffs do not dispute that Hospital KADs sell these additional services or coordinate within a different sales model in the hospital context. [42] ¶¶ 53–54. Additional job duties that are not performed by plaintiffs can

suggest different levels of responsibility between positions. *See Cullen*, 338 F.3d at 700. But these additional tasks must make the jobs "substantially different." *Id.* at 698. A reasonable jury could find that the additional tasks performed by Hospital KADs are comparable to other tasks performed by the National KADs. In the example offered by defendant, Hospital KADs sell "in-service" options to hospital clients— something that National KADs do not sell—but National KADs also more commonly sell "self-service" options. It is not clear from defendant's example that the National KADs expend less effort or have fewer responsibilities. A reasonable inference could be drawn based on these facts that the additional effort and responsibility required of National KADs to sell "self-service" options offsets the effort and responsibility required of Hospital KADs to sell "in-service" options. The fact that the two positions sell different products to different clients does not establish that the jobs are substantially different.

Viewing these facts in a light favorable to plaintiffs, a reasonable jury could find that National KADs perform substantially equal work as Hospital KADs. Plaintiffs establish a prima facie case under the Act.

### 2. Stericycle's Affirmative Defenses

Defendant must prove that a sex-neutral factor explains the pay disparity. *Cullen*, 338 F.3d at 702. Defendant offers several justifications for why Employee 1's base salary is higher than plaintiffs' base salaries. One factor is Employee 1's experience before joining Stericycle. [39] at 16. Employee 1 joined Stericycle as a Senior National Account Manager in 2010 at a starting salary of $120,000 plus

commissions and stock options. [42] ¶ 26. He was hired with a bachelor's degree and 20 years of experience. [42] ¶ 26. Stericycle also engaged in salary negotiations to meet his initial demand of $150,000. [42] ¶ 26. Defendant points out that this was a higher starting salary and position than any of the plaintiffs': Hopkins joined Stericycle in 2009 at a base salary of $49,500, Lane in 2013 at a base salary of $60,000, Hause in 2001 at a base salary of $55,440, and Stone in 2016 at a base salary of $57,000. [42] ¶¶ 5–6, 8, 10. Defendant notes that Employee 1 had a higher education level than at least one plaintiff—Stone was hired with a high school diploma and four years of sales experience. [42] ¶ 9. But defendant does not assert that Employee 1 had a higher education level than Hopkins, Lane, or Hause, so defendant's justification cannot rest on differences in educational background alone. But paying Employee 1 a higher wage because of his prior experience is a legitimate nondiscriminatory reason. *Fallon*, 882 F.2d at 1212 ("Employers may prefer and reward experience, believing it makes a more valuable employee, for whatever reason."); *see also Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1462 (7th Cir. 1994) (finding that a male employee's initial offer, salary negotiations, and educational background were factors showing that his higher salary was unrelated to sex).

Similarly, Employee 1's years of experience at Stericycle is a valid sex-neutral justification. Employee 1 worked in the Senior NAM position for ten years before his promotion to a Regional Sales Director position. [42] ¶ 27. Defendant points out that none of the plaintiffs held this position before their promotions: Hopkins was in the NAM position for five years, Lane for five years, Hause for two years, and Stone for

two years. [42] ¶¶ 5–6, 8, 10. Additionally, Employee 1 had two years of experience as a Regional Sales Director before stepping down to the KAD position. [42] ¶ 29. Plaintiffs admit that they do not have comparable experience in a director-level position or with supervising other employees. [42] ¶ 30. But they argue that the KAD position did not require director-level experience, so it cannot be a permissible factor other than sex. [46] at 11. Possession of a skill or credential not required for a job cannot be considered in assessing equality of skill, but defendant correctly points out that this relates to the inquiry at the prima facie stage where the comparison is between positions rather than individuals. *See Cullen*, 338 F.3d at 699. When assessing an employer's affirmative defenses, an individual employee's experience is a permissible factor other than sex. *See Fallon*, 882 F.2d at 1212. Plaintiffs also contend that Employee 1 had not been a salesperson for two years, so a jury could find that he was less qualified for the position. [46] at 11. No reasonable jury could find that Employee 1's experience as a Regional Sales Director—overseeing other sales employees—made him *less* qualified. Ultimately, the question is whether the employer's use of experience in setting pay is a permissible factor other than sex, and employers are entitled to reward experience "for whatever reason." *Fallon*, 882 F.2d at 1212.

Defendant also asserts that Employee 1's superior performance reviews is a valid factor other than sex. As a Senior NAM, Employee 1 received the highest rating of "exceeds expectations" on four out of five of his most recent performance reviews. [42] ¶ 27. Hopkins, Lane, Hause, and Stone never received the "exceeds expectation"

20

rating as NAMs. [42] ¶ 12. An employer may consider performance reviews when setting pay. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007). Plaintiffs do not address this point in their briefs and offer no evidence to create a genuine issue of material fact on this issue.

Plaintiffs do not identify any other factual disputes on the relative qualifications or experience of Employee 1, but they argue that defendant has not shown that these reasons played a role in setting his salary as a KAD. [46] at 10. While plaintiffs are not required to prove pretext to succeed on their claim, they may introduce evidence that raises a genuine issue of material fact about whether defendant's justifications are bona fide. Plaintiffs say that Senior Vice President Caruso testified that she instructed Employee 1 to speak to Vice President Frey about stepping down to the KAD role; Frey testified that the salary was based on Employee 1's previous salary; HR Director Galloway testified that she knew about Employee 1's request but did not deal directly with it; and Human Resources Business Partner, Kelly Pierce, testified that she had to consult Galloway about compensation questions because she did not know about the newly created position. [46] at 10–11. But this evidence does not suggest that Employee 1's qualifications or experience were not actually factors in setting his pay. At most, the record shows that there was no single decision-maker responsible for setting Employee 1's salary.[8] It does not controvert

---

[8] Even if admissible for the truth of the matter asserted, Employee 1's belief that Senior VP Caruso had "hooked him up" with his salary, [56] ¶ 23, lacks foundation and does not controvert the direct evidence from witnesses with personal knowledge about how Employee 1's salary was set.

defendant's assertion that Employee 1's qualifications and experience were among the factors considered in setting his pay.

Plaintiffs also argue that that defendant's consideration of experience and education in setting Employee 1's salary was discriminatorily applied. [46] at 11. They point to the fact that plaintiffs all make the same base salary despite their very different education levels and experience. The problem with this argument is that plaintiffs are trying to compare two different time periods. Employee 1's salary as a KAD was in part determined when he was initially hired—his starting salary incorporated his prior years of experience and education. So, the proper point of comparison to determine if there was discriminatory application of this criteria would be when plaintiffs were also hired at Stericycle. And plaintiffs do not make any argument that the salary practices at the point of hiring were discriminatorily applied.

Defendant contends that Employee 1's demotion due to medical issues and subsequent salary retention justifies the wage differential. [57] at 6–7. Employee 1 asked to step down to a less demanding position and accepted a pay cut, but he requested that Stericycle match the salary he was previously earning as an NAM before his promotion (including a 2% increase accounting for pay raises he would have received in the role). [42] ¶ 33; [56] ¶ 14. Employee 1's previous salary as an NAM was $151,998. [42] ¶ 34. His salary as a KAD after the demotion was set to $155,000 plus commissions. [42] ¶ 36. Employers are permitted to account for the wages they previously paid an employee in another position so long as the policy was not

discriminatorily applied or otherwise based on sex. *Covington v. S. Illinois Univ.*, 816 F.2d 317, 323 (7th Cir. 1987). "Maintenance of an employee's compensation in a transfer between positions is not in our view unusual and avoids the serious problem of 'unmerited' pay reductions." *See id.* A "red circle" rate refers to "certain unusual, higher than normal, wage rates which are maintained for reasons unrelated to sex." 29 C.F.R § 1620.26(a). A bona fide use of a red circle rate may arise, for example, when "a company wishes to transfer a long-service employee, who can no longer perform his or her regular job because of ill health, to different work which is now being performed by opposite gender-employees." 29 C.F.R § 1620.26(a). In such a situation, maintenance of the employee's salary despite a transfer to a less demanding job is a valid reason for a pay disparity because it is based on a factor other than sex.

Plaintiffs say that defendant has not offered any evidence of such a "red circling" policy, but defendant does not need to prove the existence of a formal policy for the demotion and salary retention justifications to be legitimate. They only need to prove that some factor other than sex explains the higher wages. Plaintiffs offer two reasons for why defendant's justifications are not bona fide. They argue that a reasonable jury could question defendant's "morale" (salary retention) argument because the real reason Employee 1 stepped down was to avoid working under Vice President Frey. Plaintiffs say that a reasonable jury could wonder why defendant "would want to improve the morale of an employee who refuses to report to a new boss." [46] at 12. But plaintiffs rely on inadmissible hearsay to support this point, and

Employee 1 denied that a personal issue with Frey prompted him to request a demotion. *See* [49-13] at 32:9–34:8. Even if the real reason Employee 1 requested a demotion was due to a personal dislike of his supervisor, it would still be a sex-neutral factor for defendant to consider.

Plaintiffs further contend that defendant's reason is impermissible because of discriminatory application. Hause and Lane both experienced health issues that required them to take medical leave. [56] ¶¶ 36–37. Neither Hause nor Lane were paid commissions while on leave. *Id.* Because defendant did not consider those medical issues in setting plaintiffs' base salaries but did so for Employee 1, plaintiffs argue that this justification should be rejected. [46] at 12. Nothing in the record suggests that Hause and Lane requested a demotion based on their medical issues. If either Hause or Lane had made a request for a demotion with salary retention and defendant rejected the request but accommodated Employee 1's request, there would be a reasonable basis to suggest sex-based discrimination really explains the difference. But there can be no discriminatory application of a policy when no such request was made. Even when viewing the facts in favor of plaintiffs, the evidence in the record is insufficient to create a genuine issue of material fact as to whether defendant's reasons for paying Employee 1 a higher wage were legitimate.

As to the pay disparity between plaintiffs and Hospital KADs, defendant offers the affirmative defense of prior position and salary to explain the higher wages. After the Supernova reorganization, nine male employees in the hospital division of the sales umbrella were promoted or transferred to the newly created Hospital KAD

position. [38-4] at 3–4. Two employees, Robert Austin and Roni Patel, were promoted from a paygrade 5 position and given a corresponding salary increase. [38-3] at 2–3; [38-4] at 4. Every other employee moved into the Hospital KAD position retained the same salary they held before the reorganization. *See* [38-3] at 2–3. As was the case with Employee 1's demotion, salary retention for Hospital KADs due to a transfer within the company constitutes a sex-neutral factor. *See Covington*, 816 F.2d at 323. To be sure, "such evidence must be considered with some caution, of course, as undue reliance on salary history to explain an existing wage disparity may serve to perpetuate differentials that ultimately may be linked to sex." *Dey*, 28 F.3d at 1462. Plaintiffs argue that defendant offers no evidence as to why male sales employees on the hospital side could have historical base salaries so much higher than employees on the national side. [46] at 19. They also point to the fact that many of the male Hospital KADs had fewer years at Stericycle than plaintiffs yet were paid more.[9] While the burden of an affirmative defense remains with the employer, plaintiffs who rely on a historical salary argument must introduce evidence that calls into question the employer's use of salary history. *Wernsing v. Dep't of Hum. Servs., State of Illinois*, 427 F.3d 466, 470 (7th Cir. 2005) ("Wage patterns in some lines of work could be

---

[9] Plaintiffs submit a chart tallying the years of service of all KADs, their genders, and their wages. [56] ¶ 38. The "years of service" calculation includes tenure of employees at companies acquired by Stericycle. To support this calculation, plaintiffs cite to the personnel files of all KAD employees in the record. Defendant objects to plaintiffs' calculation of an employee's time at Stericycle as unsupported by any specific reference to the record and without foundation. Defendant's objections to the characterization of years of service and the bulk citation to personnel files are well-taken, but for purposes of summary judgment, I accept plaintiffs' assertion that some plaintiffs had more years of tenure at Stericycle than some male employees.

discriminatory, but this is something to be proved rather than assumed. [Plaintiff] has not offered expert evidence… to support a contention that the establishments from which the Department recruits its employees use wage scales that violate the Equal Pay Act and thus discriminate against women."). In other words, plaintiffs do not raise an issue of fact that suggests Stericycle's salary practices for hospital-side sales employees before the reorganization were based on discriminatory factors. Without such evidence, summary judgment is appropriate because no reasonable juror could find that the pay disparity was a result of sex.[10]

## B. Title VII

Plaintiffs also bring a claim for sex discrimination under Title VII of the Civil Rights Act of 1964. Title VII prohibits employers from discriminating against employees with respect to their compensation because of their sex. 42 U.S.C. § 2000e–2(a)(1). Plaintiffs do not need to proceed under the *McDonnell Douglas* burden-shifting framework to succeed on a Title VII claim. *See Palmer v. Indiana Univ.*, 31 F.4th 583, 589 (7th Cir. 2022). At the summary judgment stage, the ultimate issue is "whether the totality of the evidence permits a reasonable juror to conclude that there

[10] Plaintiffs say that that defendant's justification about the use of prior salaries is not bona fide because Stericycle directors offered inconsistent explanations for factors that went into setting KAD base salaries. [46] at 18. They argue that Vice President Caruso testified that Stericycle considered education, experience, and skill, but HR Director Galloway's declaration stated that prior salary was the "sole consideration." [56] ¶ 31. As discussed above, Galloway's declaration offers further explanation about the post-reorganization compensation plan for Hospital KADs after defendant found out about plaintiffs' intention to add Hospital KADs as male comparators. Caruso's testimony touches on what general factors Stericycle considered in setting compensation for employees during the reorganization. *See* [49-3] at 90:3–20. This evidence does not suggest inconsistent accounts—Galloway's declaration offers specific information about the Hospital KAD transfers.

would have been no disparity in pay" if plaintiffs were the opposite sex and "everything else had remained the same." *Id.*

Plaintiffs argue that the totality of evidence supports an inference of discriminatory pay. [46] at 19. As discussed above, Employee 1's experience and qualifications compared to plaintiffs make him an unsuitable comparator. Employee 1 started at Stericycle with ten years of sales experience, negotiated his starting salary, and had experience in the director-level position managing sales employees. [42] ¶¶ 26–29. As to the Hospital KADs, plaintiffs establish that they perform comparable work. But this is not enough to support an inference of intentional discrimination. Plaintiffs must show that the protected characteristic—their sex— was the real reason why defendant paid them less. Defendant's justification as to the Equal Pay Act claim applies with equal force here—the salary disparity between Hospital KADs and plaintiffs was based on prior salary history. With the exception of two employees who were promoted and given salary raises, Hospital KADs retained the same base salary that they earned before the Supernova reorganization. [38-3] at 2–3. Here too, plaintiffs do not identify evidence in the record suggesting that Stericycle's historical salary practices prior to the reorganization were discriminatory. Without any evidence in the record to suggest that the salary retention policy for Hospital KADs was discriminatory or rooted in discriminatory historical practices, plaintiffs cannot support an inference of intentional sex discrimination. Because the undisputed facts show that the pay disparity between

plaintiffs and their male colleagues was due to factors other than sex, summary judgment on both the Equal Pay Act and Title VII claims is granted.

## IV. Conclusion

Defendant's motion for summary judgment, [37], is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

_____

Manish S. Shah
United States District Judge

Date: March 13, 2024